Citation Nr: 1532799 
Decision Date: 07/31/15 Archive Date: 08/05/15

DOCKET NO. 09-45 350 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Newark, New Jersey


THE ISSUE

Entitlement to service connection for residuals of an Anthrax vaccination to include joint pain, muscle pain, tendon pain and stomach pain. 


REPRESENTATION

Appellant represented by: National Association of County Veterans Service Officers


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

B. Mullins, Counsel 
INTRODUCTION

The Veteran had active service from March 1985 to June 1997. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a September 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Newark, New Jersey. This claim was previously remanded by the Board for further evidentiary development in October 2011 and November 2014. 

In June 2011, the Veteran testified before the undersigned at a hearing at the RO in Newark, New Jersey. A transcript of this hearing was prepared and has been associated with the Veteran's electronic record (Veterans Benefits Management System (VBMS)). 


FINDINGS OF FACT

1. The Veteran received the Anthrax vaccine in 1999. 

2. The Veteran does not suffer from a current chronic disability, to include joint pain, muscle pain, tendon pain or stomach pain, that manifested during, or as a result of, active military service, to include his receipt of the Anthrax vaccine. 


CONCLUSION OF LAW

The criteria for establishing entitlement to service connection for a disability associated with joint pain, muscle pain, tendon pain or stomach pain have not been met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1131, 1153, 5103(a), 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304, 3.306(b), 3.307, 3.309 (2014).



REASONS AND BASES FOR FINDINGS AND CONCLUSION

Duty to Notify

VA has a duty to notify and assist veterans in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2014). 
 
Proper notice from VA must inform the Veteran of any information and medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the Veteran is expected to provide in accordance with 38 C.F.R. § 3.159(b)(1). This notice must be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

In addition, the notice requirements apply to all five elements of a service-connection claim, including: (1) veteran status; (2) existence of a disability; (3) a connection between a veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Further, this notice must include information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. Id. at 486. 

A letter sent to the Veteran in January 2008 addressed all notice elements listed under 3.159(b)(1) and was sent prior to the initial RO decision in this matter. The letter informed him of what evidence was required to substantiate the claim and of his and VA's respective duties for obtaining evidence. The letter also informed him as to how VA determines the appropriate disability rating and effective date. Under these circumstances, the Board finds that the notification requirements have been satisfied as to both timing and content. Adequate notice was provided to the Veteran prior to the transfer and certification of his case to the Board that complied with the requirements of 38 U.S.C. § 5103(a) and 38 C.F.R. § 3.159(b). 


Duty to Assist

Next, VA has a duty to assist the Veteran in the development of the claim. This duty includes assisting him in the procurement of service medical records and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. 

The Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the appellant. See Bernard v. Brown, 4 Vet. App. 384 (1993). VA obtained the Veteran's service treatment records. Also, the Veteran received VA medical examinations in May 2014, January 2015 and May 2015, and VA has obtained these records as well as the records of the Veteran's outpatient treatment with VA. Each examination report reflects a review of the claims file, a pertinent history and all clinical findings and opinions necessary for proper adjudication of the Veteran's claim, and are therefore adequate for adjudication purposes. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). 
Copies of private treatment records have also been associated with the claims file. Significantly, neither the Veteran nor his representative has identified any additional existing evidence that is necessary for a fair adjudication of the claim that has not yet been obtained. 

Additionally, the Board finds that there has been substantial compliance with its November 2014 remand directives. The Board notes that the Court has held that "only substantial compliance with the terms of the Board's engagement letter would be required, not strict compliance." See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); see also Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (holding that there was no Stegall (Stegall v. West, 11 Vet. App. 268) violation when the examiner made the ultimate determination required by the Board's remand). The record indicates that the Appeals Management Center (AMC) obtained additional VA treatment records and scheduled the Veteran for a medical examination. The AMC later issued a Supplemental Statement of the Case (SSOC). Based on the foregoing, the Board finds that the AMC substantially complied with the mandates of its remand. See Stegall, supra, (finding that a remand by the Board confers on the appellant the right to compliance with its remand orders). 

As previously noted, the Veteran was provided an opportunity to set forth his contentions during a hearing before the undersigned Veterans Law Judge in June 2011. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the Court held that 38 C.F.R. § 3.103(c)(2) requires that a Veterans Law Judge who chairs a hearing to fulfill two duties: (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. 

Here, the undersigned noted the issues on appeal and solicited information regarding the occurrence of injuries and onset and nature of his symptomatology as well as the functional impact the claimed disabilities have on his daily life and employment. The Veteran was advised of the reasons for the previous denials and of the type of evidence that could be identified or submitted to further substantiate the claims. Therefore, not only were the issues "explained . . . in terms of the scope of the claim for benefits," but "the outstanding issues material to substantiating the claim," were also fully explained. See Bryant, 23 Vet. App. at 497. Moreover, the hearing discussion did not reveal any evidence that might be available that had not been submitted. Under these circumstances, nothing gave rise to the possibility that evidence had been overlooked with regard to the Veteran's claims. As such, the Board finds that, consistent with Bryant, the undersigned complied with the duties set forth in 38 C.F.R. § 3.103(c)(2) and that the Board may proceed to adjudicate the claims based on the current record.

Hence, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist him in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002). 

Relevant Laws and Regulations

Service connection is warranted where the evidence of record establishes that a particular injury or disease resulting in disability was incurred in the line of duty in the active military service or, if preexisting such service, was aggravated thereby. 38 U.S.C.A. 1110, 1131 (West 2002); 38 C.F.R. § 3.303(a) (2014). 

In general, service connection requires competent evidence showing: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

In the absence of proof of a present disability there can be no valid claim. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). Service connection requires a finding of the existence of a current disability and a determination of a relationship between that disability and an injury or disease incurred in service. Watson v. Brown, 4 Vet. App. 309, 314 (1993); see also Boyer v. West, 210 F.3d 1351, 1353 (Fed. Cir. 2000). 

The Board must assess the credibility and weight of all of the evidence, including the medical evidence, to determine its probative value, accounting for evidence that it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. See Masors v. Derwinski, 2 Vet. App. 181 (1992); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992); Hatlestad v. Derwinski, 1 Vet. App. 164 (1991); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). Equal weight is not accorded to each piece of evidence contained in the record; not every item of evidence has the same probative value. 

Furthermore, in determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C.A. § 5107; Gilbert, 1 Vet App. at 49. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of the matter, the benefit of the doubt will be given to the Veteran. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. 

The Board notes that it has thoroughly reviewed the record in conjunction with this case. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the extensive evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence). Rather, the Board's analysis below will focus specifically on what the evidence shows, or fails to show, on the claim. See Timberlake v. Gober, 14 Vet. App. 122, 129 (2000) (noting that the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant). 

Where a veteran has served for 90 days or more during a period of war, or during peacetime service after January 1, 1947, and a chronic disorder, such as arthritis, becomes manifest to a degree of 10 percent within one year from the date of termination of such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1112, 1137; 38 C.F.R. §§ 3.307, 3.309 (2014). 

In order to show a chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word "chronic." When the fact of chronicity in service is not adequately supported, then a showing of continuity after discharge is required to support a claim. There must be competent medical evidence unless the evidence relates to a condition as to which lay observation is competent to identify its existence. See 38 C.F.R. § 3.303(b) (2014). 

A recent decision of the United States Court of Appeals for the Federal Circuit (Federal Circuit Court), however, clarified that this notion of continuity of symptomatology since service under 38 C.F.R. § 3.303(b), which as mentioned is an alternative means of establishing the required nexus or linkage between current disability and service, only applies to conditions identified as chronic under 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

Lay evidence, if competent and credible, may serve to establish a nexus in certain circumstances. See Davidson v. Shinseki, 581 F.3d 1313 (2009) (noting that lay evidence is not incompetent merely for lack of contemporaneous medical evidence). When considering whether lay evidence may be competent, the Board must determine, on a case by case basis, whether the Veteran's particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011); see also Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007) (holding that "[w]hether lay evidence is competent and sufficient in a particular case is a factual issue

Analysis

The Veteran contends that he is entitled to service connection for residuals of an Anthrax vaccination to include joint pain, muscle pain, tendon pain and stomach pain. However, as outlined below, the preponderance of the evidence of record reflects that the Veteran does not suffer from a current chronic disability that manifested during, or as a result of, active military service, to include his in-service Anthrax vaccination. As such, service connection is not warranted. 

The Veteran's service treatment records reflect that he received the third round of the Anthrax vaccination in 1999. Several months later, he began to complain of joint pain. A November 1999 private treatment note indicates that the Veteran had been complaining of two months of aching in the third to fifth proximal interphalangeal joints and more so in the area between the joints. He also complained of aching in the feet. The examining physician indicated that it should be noted that the Veteran had a series of Anthrax vaccinations that began shortly before his joints started to hurt him. According to the physician, the Veteran's symptoms could certainly be a prodrome of rheumatoid arthritis. One also had to be concerned that in some way the Anthrax vaccination had triggered immune complex deposition. However, the physician indicated that he did not know how one could figure this out. The military subsequently concluded in December 1999 that the Veteran was allergic to the Anthrax vaccine and determined that he should not receive further vaccinations. 

An August 2000 treatment note states that the Veteran suffered a systemic adverse reaction after the third dose of Anthrax vaccine. While Type I hypersensitivity to the vaccine was not demonstrated, his symptoms were compatible with a 'form fruste' Type II, and thus should be considered for waiver for additional Anthrax injections. It was not possible to determine the actual cause of his symptoms.

The Veteran was seen for an allergy consultation in March 2002. It was noted that the Veteran was in usual health until August 1999 when he received the first 3 Anthrax vaccinations. He then began, two weeks later, to complain of soreness of both hands, discomfort in his feet and joint pain. There was no prior history of similar symptomatology. He had continued these symptoms for the last 2 years on and off and the symptoms were primarily confined to the hands. The examining physician concluded that he could not rule out the possibility of an Anthrax vaccine adverse reaction or sensitivity. However, it was noted that there was no specific testing to make this diagnosis. An August 2003 treatment note also states that about 2 weeks after receiving the third Anthrax vaccination in August 1999, the Veteran developed symptoms of joint stiffness and arthralgias in the fingers, toes, wrists and ankles. The symptoms worsened over the following 6 months but then abated the following 6 months. 

The record reflects that the Veteran was afforded a VA examination for his claimed disabilities in May 2014. The Veteran reported that in August 1999 he had 3 Anthrax vaccinations and subsequently developed joint pain, muscle pain, tendon pain and stomach pain. Evaluation revealed the Veteran to be negative for any gastrointestinal or neurological disability. The examiner opined that the claimed condition was less likely than not incurred in or caused by military service. The examiner explained that while the Veteran had subjective complaints, no disability was in fact found pending EMG (electromyograph) studies. 

According to a January 2015 VA examination report, the Veteran's claimed disability was less likely than not related to military service. The examiner explained that while the Veteran had an upper endoscopy in 2001 for vague abdominal pain, this revealed mild gastritis. A biopsy was negative. A finding of gastritis by endoscopy is very common in the general population and the probability of this being secondary to Anthrax vaccination is very low. Regarding the Veteran's musculoskeletal complaints, there was no objective evidence on physical examination and the EMG studies were normal. As such, there was no disability or diagnosis that could be made that could be attributed to the Veteran receiving an Anthrax vaccination. However, the examiner subsequently opined that it was at least as likely as not that the Veteran's claimed disability manifested during military service, as his current symptoms were similar to but less severe than those that he experienced following his Anthrax vaccinations in service. 

In light of the contradictory nature of the prior opinion, another examination was performed in April 2015. Upon reviewing the claims file and the medical literature, the examiner opined that it was less likely as not that the Veteran's current symptoms of joint pain and stiffness, muscle and tendon pain, and stomach pain (diagnosed as mild gastritis) were attributable to the Anthrax vaccines he received in service, or were otherwise related to service. The examiner explained that it seemed very likely that the Veteran's assertion that his gastritis was proximately due to his Anthrax vaccination was without merit. While it is clear that adverse events due to Anthrax vaccinations are possible, the Veteran's gastritis is less likely than not to be due to his exposure to the vaccine. In a 2004 review of adverse events associated with the Anthrax vaccination in the Vaccine Adverse Event Reporting System, there were no cases of gastroenteritis associated with the vaccine. 

The examiner also referenced an article that the Veteran had submitted in support of his claim. The article, titled "Gastrointestinal adverse reactions following Anthrax vaccination: an analysis of the vaccine adverse events reporting system (VAERS)," was noted to have major flaws in logic, statistics and conclusions by the examiner. Furthermore, it was noted that the author's conclusions did not support the Veteran's position. First, the authors did not define their inclusion criteria for "gastrointestinal disease." Although they indicated that they had identified 4 cases of gastrointestinal disease in VAERS, no more detailed description of them was provided. There was no particular reason to suppose that all, or any of them, were gastritis. In addition to the omission of criteria for gastrointestinal disease, the authors appear to have made a very significant error in statistical reasoning. They conducted multiple comparisons, and reported only the ones that were significant at "P values less than 0.05." They seem to be unaware that such a procedure can generate multiple false-positive findings and required special statistical corrections. They did not describe any such methodology, and they did not document how many different comparisons were made to come up with their "statistically significant" findings. This calls into question the validity of their conclusions. Serious questions about the impartiality and credibility of the authors of this article have been raised by the press. The New York Times reported that the first author of this article is an expert witness who has had his license to practice medicine suspended for false claims. In addition, the New York Times reported that judges have stated that Dr. Deier was "a professional witness in areas for which he has no training, expertise and experience," and that his testimony was "intellectually dishonest." They also reported that his research has been described by Dr. Steven Black, director of the Kaiser Permanente Vaccine Study Center, as "voodoo science." In addition, the IOM has described his studies regarding vaccine adverse reactions as "uninterpretable." As such, the examiner opined that the Veteran's assertion that his gastritis was proximately caused by an Anthrax vaccination was not supported by a credible assessment of VAERS, and the article that the Veteran cited is flaws and also does not support his assertion. 

The preponderance of the evidence demonstrates that the Veteran is not entitled to service connection for residuals of an Anthrax vaccination to include joint pain, muscle pain, tendon pain and stomach pain. The Board recognizes that the Veteran experienced symptoms such as joint pain and stomach pain following his Anthrax vaccine in 1999. However, the preponderance of the evidence of record suggests that the Veteran does not currently suffer from any chronic disability that manifested as a result of military service or his Anthrax vaccinations. Multiple VA examiners have concluded that EMGs have revealed the Veteran's musculoskeletal system to be normal. As such, there is no diagnosis of a current chronic muscular or skeletal disability. There must be a current diagnosis of a disorder for service connection to be granted. Hickson v. West, 12 Vet. App. 247, 252 (1999). Without a medical diagnosis of a chronic muscular or skeletal disability, the Board must deny the Veteran's claim. See Degmetich v. Brown, 104 F.3d 1328, 1333 (1997) (holding that the existence of a current disability is the cornerstone of a claim for VA disability compensation). 

As for the Veteran's claim of entitlement to service connection for stomach pain, the April 2015 VA examiner concluded that it was less likely than not that this condition manifested during, or as a result of, military service, to include as secondary to Anthrax vaccinations. The examiner explained that in a 2004 review of adverse reactions to the Anthrax vaccine, gastritis was not one of these reactions. While the Veteran referenced an article in support of his claim, the examiner explained that this article failed to provide valid results due to the methodology and procedures used by those authoring the article. Furthermore, it had been determined that the article was based on the testimony of those who lacked the proper expertise and were "intellectually dishonest." There is no other competent evidence of record linking a current chronic gastrointestinal disability to military service, to include Anthrax vaccinations. 

The Board recognizes that the January 2015 VA examiner opined that it was at least as likely as not that the Veteran's claimed disability manifested during military service, as his current symptoms were similar to but less severe than those that he experienced following his Anthrax vaccinations in service. However, the same examiner also concluded that the Veteran's claimed disability was less likely than not due to military service. In light of the contradictory opinions offered by this examiner, his claims file was forwarded to an additional examiner in April 2015 that unequivocally concluded that the Veteran's claimed disabilities were less likely than not due to military service. 

The Board also recognizes that the Veteran believes he suffers from a current chronic disability as a result of his in-service Anthrax vaccinations. In February 2008, he described his symptoms of pain in the finger joints of both hands. He reported that even though his symptoms abated, he is now left with permanent pain in the fingers and tendons of the hands, lower arms and feet. The Veteran also reported that he had stomach discomfort that, while it had abated, still prevented him from eating certain foods without a flare-up of stomach pain. While the Veteran is certainly competent to testify to his symptomatology, the record contains no evidence to suggest that the Veteran has the requisite training or expertise to offer a medical opinion as complex of linking current joint pain, muscle pain or stomach pain to a vaccine he received approximately 16 years ago. As such, the Veteran's assertions fail to demonstrate that he suffers from a chronic joint, muscle or stomach disability that manifested during, or as a result of, active military service, to include his Anthrax vaccinations. 

The record also contains a statement from another Air Force Officer dated February 2008. According to this statement, the Veteran had reactions almost immediately after he started receiving the Anthrax vaccine. The Veteran reportedly complained of soreness in his hands that got worse over the following months and spread to other parts of his body. Over the following months, the Veteran reported that some of the symptoms went away but he was left with permanent soreness in his hands and feet. The Veteran made a similar contention in a statement dated January 2009, relating his joint pain and stomach discomfort to his Anthrax vaccinations. The Veteran also provided testimony in June 2011, in which he stated that his symptoms began within a month of his third Anthrax vaccination. The Veteran believed that these were related to his vaccinations for which he was not provided proper warning about potential side-effects. While the Veteran may have experienced symptomatology following his original vaccinations, there is no evidence that he currently suffers from any chronic disability resulting from these vaccinations. As such, the lay statements of record fail to reflect that service connection is warranted. 

Since the preponderance of the evidence is against the claim, the provisions of 38 U.S.C. § 5107(b) regarding reasonable doubt are not applicable. The claim of entitlement to service connection for residuals of an Anthrax vaccination to include joint pain, muscle pain, tendon pain and stomach pain must be denied. 





ORDER

The claim of entitlement to service connection for residuals of an Anthrax vaccination to include joint pain, muscle pain, tendon pain and stomach pain is denied. 



____________________________________________
DEBORAH W. SINGLETON
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs